UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 06-10697 |
| | : | CHAPTER 7 |
| NINA L. KORWIN, DEBTOR | : | |
| | : | |
| MASON AND MASON, Movant | : | DOCUMENT NO. 59 |
| vs. | : | RELATED TO DOCUMENT 14 |
| NINA L. KORWIN, Respondent | : | |

APPEARANCES:

CURTIS E. BLYSTONE, ESQ., MEADVILLE, PA, ATTORNEY FOR MOVANT
DANIEL P. FOSTER, ESQ., PITTSBURGH, PA, ATTORNEY FOR DEBTOR
RICHARD W. ROEDER, ESQ., TITUSVILLE, PA, CHAPTER 7 TRUSTEE

WARREN W. BENTZ, U.S. BANKRUPTCY JUDGE

DECEMBER 10, 2007

**OPINION**

**Introduction**

Nina L. Korwin ("Debtor") filed a voluntary Petition under Chapter 7 of the Bankruptcy Code on June 21, 2006. Mason and Mason ("Mason") filed an objection to the Debtor's claim of exemptions at Document No. 14. Presently before the Court is a Motion for Summary Judgment filed by Mason at Document No. 59. Debtor opposes the Motion.

**Factual Background**

On September 23, 2002, Debtor filed a Complaint in Divorce seeking divorce, custody and equitable distribution in the Court of Common Pleas of Crawford County, Pennsylvania at No. A.D. 2002-1139. The Complaint was later amended to include additional counts for alimony and counsel fees. On May 27, 2005, the Debtor and her then spouse entered into a settlement

agreement to resolve the marital issues. The settlement agreement was incorporated into a final decree entered on June 22, 2005.

The parties agreed that the marital assets had a cash value of $72,995.14 and that Debtor's net share of the assets was $42,727.08. Debtor received the value of two of her then husband's 401(k) plans which left a remaining balance of $25,967.17.

Debtor was to provide a quit claim deed to the marital residence which would allow husband to refinance the marital home and use the proceeds to pay Debtor the balance in cash within 90 days.

In addition, it was agreed that Debtor would receive alimony at the rate of $300 per month for a period of 24 months. As to alimony, the record provides:

> 8. In addition, the husband agrees to pay to the wife alimony at a rate of $300.00 per month for a period of 24 months commencing on June 1st, 2005. With the alimony to be wage attached through the current domestic relations order at Docket No. DR 2002-00534, PACSES case No. 749104977.
>
> 9. To the extent that the wife has or may have a child support obligation to the husband, parties have agreed that the alimony rate as agreed to above reflects a reduction in alimony in what would otherwise be a higher alimony award or obligation after an offset for the wife's child support obligation to the husband.
>
> 10. The alimony shall continue for a period of 24 months, non-modifiable as determined in the amount. The alimony will terminate if the wife co-habitates with another individual as that term is defined by Pennsylvania divorce law or re-marries in that period of time.

When husband failed to pay the remaining balance of $25,967.17, Debtor filed a Petition for Contempt in February 2006. By Order dated May 12, 2006, husband was directed to list the property for sale and pay Debtor in full from the sale proceeds.

The Debtor filed the within bankruptcy case on June 21, 2006. On Schedule B – Personal Property, Debtor lists a contingent and unliquidated claim against her ex-husband (the "Asset") as follows:

> Debtor has a Civil Action lawsuit pending against her ex-husband Paul K. Korwin for money he did not pay, which was ordered in their divorce decree. The debtor is due $25,967.17 plus interest upon the sale of the former marital premises.

Debtor also claims the Asset as exempt on Schedule C. The entire asset is claimed as exempt under § 522(d)(10)(D).[1] Debtor also utilizes the remaining available § 522(d)(5) amount to claim $2,225 of the Asset as exempt.

The first meeting of creditors was held on July 27, 2006. On September 25, 2006, Mason filed an Objection to Debtor's Claim of Exemption. Mason asserts that the Asset is not alimony and Debtor's claimed exemptions should be disallowed. Debtor asserts that the claimed exemptions are appropriate and Mason's Objection should be dismissed, having been filed beyond the 30-day period following the conclusion of the § 341 meeting as required by Fed.R.Bankr.P.4003(b). Following an evidentiary hearing held on March 13, 2007 to consider the sole issue of whether the Objection was timely filed, we entered an interlocutory Order on May 27, 2007 finding that the Objection was timely.

The Debtor's marital residence was sold on May 24, 2007 and the Chapter 7 Trustee received and holds a portion of Debtor's share of the proceeds in the amount of $25,759.37. Debtor also received $2,225 from the proceeds of sale as the remainder of her §522(d)(5) exemption.[2]

---

[1] All references to Code sections are to Title 11 of the United States Code unless otherwise indicated.
[2] The final amount paid to the Debtor and the Trustee reflects an increase due to interest and adjustments made for the actual amounts that Debtor received from her ex-husband's 401(k) Plans.

3

Debtor filed a Second Response to Mason's Objection to Exemptions on June 26, 2007. Debtor reiterates that the claimed exemption under § 522(d)(10)(D) is appropriate.

The within Motion for Summary Judgment was filed on July 27, 2007. Mason asserts that there is no genuine issue of fact; that the marital settlement documents make clear that the funds held by the Trustee do not constitute alimony, support, or separate maintenance under § 522(d)(10)(D), but rather derive from an equitable division of marital property that cannot be claimed as exempt; and that Mason's Objection to Exemption should be sustained.

## Issue

Whether the Debtor is entitled to exempt the proceeds from the sale of the marital residence presently held by the Chapter 7 Trustee under § 522(d)(10)(D)?

## Discussion

§ 522(d)(10)(D) provides an exemption for Debtor's right to receive "alimony, support or separate maintenance," to the extent reasonably necessary for the support of the Debtor and any dependent of the Debtor, 11 U.S.C. § 522(d)(10)(D).

The first issue here is whether we need to look beyond the labels in the Debtor's settlement agreement. The agreement is clear – it totals all of the marital property and then provides for a division of that property, 60/40, in favor of the Debtor. The funds at issue, proceeds from the sale of the marital residence, are part of the property division. The agreement has a separate provision which provides for alimony of $300 per month for 24 months.

Mason directs our attention to In re Evert, 342 F.3d 358 (5th Cir. 2003). In Evert, the threshold question was whether the same approach for determining what constitutes alimony in the context of dischargeability under § 523(a)(5), looking beyond the label to determine the intent of the parties, should apply to exemptions under § 522(d)(10)(D). The Evert Court noted

4

that "nearly all courts that have considered the question have determined that the same interpretation given to § 523(a)(5) should also be applied to § 522(d)(10)(D). The Evert Court went on to note several arguments against this, but ultimately concluded that it did not need to decide the issue and went on to hold only that, at least for purposes of Section 522(d)(10)(D), where in the agreed divorce decree there is:

> 1) also a meaningful separate alimony provision, 2) the obligation in question is described as being part of the property division, 3) the label given to the obligation in question is matched by its actual characteristics, and 4) the evidence does not suggest the parties conspired to disguise the true nature of the obligation in order to subvert the bankruptcy or tax laws, there is no ambiguity necessitating the use of the *Nunnally* factors to essentially work backwards to determine the nature of the obligation.

Evert, 342 F.3d at 368.

The Debtor's situation parallels that in the Evert case. Debtor's marital settlement agreement has a meaningful separate alimony provision, the fund at issue is described as being part of the property division, the label is matched by its actual characteristics and there is no evidence to suggest that the true nature of the obligation was disguised.

> Under bankruptcy law, the intent of the parties at the time a separation agreement is executed determines whether a payment pursuant to the agreement is alimony, support or maintenance within the meaning of section 523(a)(5). *See generally In re Davidson*, 947 F.2d 1294, 1296-97 (5th Cir. 1991); *In re Gianakas*, 917 F.2d 759, 762 (3d Cir. 1990). A written agreement between the parties is persuasive evidence of their intent. *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986). Thus, if the agreement between the parties clearly shows that the parties intended the particular debt in question to reflect either support or a property settlement, then that characterization will normally control. *In re Yeates*, 807 F.2d 874 (10th Cir. 1986). On the other hand, if the agreement is ambiguous, then the court must determine the parties' intentions by looking to extrinsic evidence. *Id*. If an agreement fails to provide explicitly for spousal support, a court may presume that a so-called "property settlement" is intended for support when

5

>     the circumstances of the case indicate that the recipient spouse
>     needs support. *Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir. 1982);
>     *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984) (J.M.
>     Wisdom, J., sitting by designation).

Evert, 342 F.3d at 368.

In dischargeability action under § 523(a)(5), the Court of Appeals for the Third Circuit directs that we look beyond the label attached to the obligation by the settlement agreement to examine its true nature. See In re Gianakas, 917 F.2d 759 (3rd Cir. 1990). The answer depends on the intent of the parties at the time of the settlement agreement and can best be found by examining three principal indicators. Id. at 762.

>     First, the court must examine the language and substance of the
>     agreement in the context of surrounding circumstances, using
>     extrinsic evidence if necessary. *See In re Yeates*, 807 F.2d at 878;
>     *In re Miller*, 34 B.R. at 292. However, it is likely that "neither the
>     parties nor the divorce court contemplated the effect of a
>     subsequent bankruptcy when the obligation arose." *In re
>     Wisniewski*, 109 B.R. 926, 929 (Bankr. E.D. Wis. 1990).
>     Therefore, the parties and the state courts may not have focused on
>     whether a particular obligation was to serve as support or as a
>     property settlement unrelated to support. *In re Alloway*, 37 B.R.
>     420, 425 (Bankr. E.D. Pa. 1984). As the Pennsylvania Superior
>     Court noted, even an obligation designated as property settlement
>     may be related to support because state courts often will adjust
>     alimony awards depending on the nature and amount of marital
>     assets available for distribution. *Buccino*, 397 Pa. Super. at ----,
>     580 A.2d at 18-19. In fact, "property division often achieves the
>     same goal as alimony, *i.e.*, support." *Id*.
>
>     Because the language of the agreement alone may not provide a
>     sufficiently conclusive answer as to the nature of an obligation, the
>     second indicator to which we must look to assist in ascertaining the
>     parties' intent is the parties' financial circumstances at the time of
>     the settlement. The facts that one spouse had custody of minor
>     children, was not employed, or was employed in a less
>     remunerative position than the other spouse are aspects of the
>     parties' financial circumstances at the time the obligation was
>     fixed which shed light on the inquiry into the nature of the

6

>obligation as support. *See Shaver v. Shaver*, 736 F.2d 1314, 1317 (9th Cir. 1984).
>
>Third, the court should examine the function served by the obligation at the time of the divorce or settlement. An obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support. *See In re Yeates*, 807 F.2d at 879.

Id. at 762-63.

The agreement in this case is not ambiguous and clearly reflects the intent of the parties. The labels given to the obligation in the agreement and the substantive characteristics leave no doubt that the Asset is intended as a property settlement. There is an explicit, separate provision for alimony. At the time of the settlement, Debtor clearly understood that the Asset was a property settlement representing payment to her on account of her interest in the equity in the marital residence. We need look no further to determine the intent of the parties.

While we are sympathetic to Debtor's plight, there can only be one conclusion and that is that the intent of the parties was that the fund at issue was a property settlement that cannot be exempted under § 522(d)(10)(D) as "alimony, support, or separate maintenance."

An appropriate Order will be entered.

/s/ Warren W. Bentz
Warren W. Bentz
United States Bankruptcy Judge

7

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 06-10697 |
| | : | CHAPTER 7 |
| NINA L. KORWIN, DEBTOR | : | |
| | : | |
| MASON AND MASON, Movant | : | DOCUMENT NO. 59 |
| vs. | : | RELATED TO DOCUMENT 14 |
| NINA L. KORWIN, Respondent | : | |

## **ORDER**

This 10th day of December, 2007, in accordance with the accompanying Opinion, it shall be and hereby is ORDERED as follows:

1. Debtor's claim of exemption under § 522(d)(10)(D) is DENIED.

2. This is an interlocutory Order and not subject to appeal pending a decision on the Objection to the Claim of Mason and Mason.

3. A status conference to consider the Objection to the Claim of Mason and Mason is fixed for January 22, 2008 at 11:30 a.m., in the U.S. Courthouse, Bankruptcy Courtroom, 17 South Park Row, Erie, PA. Only 10 minutes have been reserved on the Court's calendar. All parties may participate by telephone pursuant to instructions on the Court's website.

/s/ Warren W. Bentz
Warren W. Bentz
United States Bankruptcy Judge